UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

'08 MJ 0596

| | |
|---|---|
| UNITED STATES OF AMERICA, | Magistrate Docket No. |
| Plaintiff, | |
| v. | COMPLAINT FOR VIOLATION OF: |
| Alberto GARCIA, | Title 8, U.S.C., Section 1326 Deported Alien Found in the United States |
| Defendant | |

The undersigned complainant, being duly sworn, states:

On or about **February 26, 2008,** within the Southern District of California, defendant, **Alberto GARCIA**, an alien, who previously had been excluded, deported and removed from the United States to **Mexico**, was found in the United States, without the Attorney General or his designated successor, the Secretary of the Department of Homeland Security (Title 6, United States Code, Sections 202(3) and (4), and 557), having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8 United States Code, Section 1326.

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **28th** DAY OF **FEBRUARY 2008.**

Nita L. Stormes
UNITED STATES MAGISTRATE JUDGE

CONTINUATION OF COMPLAINT:
Alberto GARCIA

## PROBABLE CAUSE STATEMENT

On Tuesday February 26, 2008 Senior Patrol Agent M. Jiron was conducting assigned duties near the area known as "The Channel". This area is approximately one mile west of the San Ysidro, California Port of Entry and approximately fifty yards north of the United States/Mexico International Boundary.

At approximately 6:40 PM Agent Jiron responded to a call from Senior Patrol Agent G. Avila. Agent Avila stated to Agent Jiron that he was observing a pair of subjects climbing over a secondary fence, making an illegal entry into the United States. Senior Patrol Agent M. Escobedo along with both Agents Jiron and Avila responded to the area.

After a brief search of the area, Agent Avila located both subjects lying in dense brush. The Agents identified themselves as border patrol agents. Agents Jiron and Escobedo were divided from Agent Avila by approximately four feet of flowing sewage water in the "Channel". As Agent Avila began to question both subjects as to their citizenship one individual later identified as the defendant **Alberto GARCIA**, jumped to his feet and entered the water dividing the agents. Agent Escobedo now questioned the second subject as to his citizenship, who admitted to being a citizen and national of Mexico, without proper immigration documents that would allow him to enter or remain in the United States legally. Agent Escobedo took that subject into custody while the defendant resisted arrest and began walking eastbound in the water.

At this time Agent Jiron noticed the defendant stooping down in the water and picking up what Agent Jiron believed to be rocks. The defendant refused commands to exit the water after having been given several commands to do so by Agent Jiron. Agent Avila entered the sewage water on foot from the north side and attempted to apprehend the defendant. The defendant resisted by splashing water toward Agent Avila and running eastbound for a short distance and then continued walking in the water. Agent Avila exited the water and paralleled the defendant on the north side of the river while Agents Jiron and Escobedo paralleled him on the south side. At that time Supervisory Border Patrol Agent (SBPA) J. Ralph arrived on scene.

SBPA Ralph identified himself, presented his agency assigned Pepperball Launching System (PLS) and explained to the defendant what the PLS is. SBPA Ralph gave the defendant several commands to exit the water. The defendant refused. At this point the defendant actively resisted arrest by having run into the water, resisted Agent Avila by having splashed him, and was seen by Agent Jiron picking up what appeared to have been rocks. SBPA Ralph saturated the bank of the river to create a cloud of pepper dust in the path of the defendant. SBPA Ralph gave the defendant repeated commands to exit the water and surrender. The defendant refused. SBPA Ralph again saturated the area.

SBPA Ralph explained to the defendant that he would enter the water in order to arrest him and continued to order the defendant out of the water. The defendant refused. SBPA Ralph stated to the defendant that because of his continued resistance he would now be impacted with pepper ball projectiles. The defendant refused to exit the water. The defendant was now impacted with 4-6 pepper ball projectiles. The impact had no effect on the defendant as he was wearing two shirts and the outer garment was a heavy pull over sweat shirt with a hood.

CONTINUATION OF COMPLAINT:
Alberto GARCIA



The defendant was still hiding his hands. Agent Jiron believed the defendant was still holding the rocks. SBPA Ralph gave the defendant more commands to show his hands and surrender. Again, the defendant refused. The defendant was impacted again with 4-6 pepper ball projectiles. The defendant still refused to exit the water and continued to walk east. SBPA Ralph again gave the defendant commands to exit the water. The defendant refused. SBPA Ralph impacted the defendant again with 4-6 pepper ball projectiles. At this point SBPA Ralph exhausted all his issued pepper ball projectiles. Senior Patrol Agent E. Caliri now arrived on scene, also carrying an Agency issued PLS.

Agent Caliri identified himself to the defendant as a Border Patrol Agent and also commanded the defendant to exit the water. The defendant refused. Agent Caliri deployed his PLS with a 4-6 projectile burst impacting the defendant. The defendant then stopped in the water and bent over. At this point, Agent Avila and SBPA Ralph entered the flowing water to take the defendant into custody. The defendant offered physical resistance by slashing about and flailing his arms. SBPA Ralph and Agent Avila took the defendant into custody and had him transported to the Imperial Beach Border Patrol Station for processing.

Routine record checks of the defendant revealed a criminal and immigration history. The defendant's record was determined by a comparison of his criminal record and the defendant's current fingerprint card. Official immigration records of the Department of Homeland Security revealed the defendant was previously deported to **Mexico** on **February 09, 2006**, through **Nogales, Arizona.** These same records show that the defendant has not applied for permission from the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security, to return to the United States after being removed.

The defendant was advised of his Miranda rights. The defendant stated that he understood his rights and was willing to answer questions without an attorney present. The defendant admitted that he is a citizen and national of Mexico illegally present in the United States. The defendant further admitted that he had been previously deported from the United States and has not applied or requested permission to re-enter the United States legally.